THE UNITED STATES, APPELLANTS, *v.* JEANNETTE CAROLINE CASTANT, WIDOW IN COMMUNITY OF JACOB BRANDEGEE, DE- CEASED, AND NATURAL TUTRIX OF HER MINOR CHILDREN, VIZ.: ODILE MADELINE, CAMILLUS JOHN, STEPHAINE, MARIE HEN- RIETTA BRANDEGEE, AND OF CAROLINE CLOTILDE BRANDEGEE, WIFE OF HENRY LLOYD, BENEFICIARY HEIRS AND LEGAL RE- PRESENTATIVES OF SAID JACOB BRANDEGEE, DECEASED.

This court again decides, as in 9 How. 127, and 10 How. 609, that by the act of 1824, a claimant of land in Louisiana must aver and prove his residence in that Province at the date of the grant, or on or before the 10th of March, 1804.

Also, that the act was not intended to provide for perfect grants. Over such, the District Court has no jurisdiction.

A decree of the court was erroneous, authorizing the claimants to enter public land,

upon the ground that the United States had sold what was covered by the claim, when there was no evidence that the United States had made any such sales.

THIS was a land case arising under the acts of 1824 and 1844, which came up by appeal from the District Court of the United States for the Eastern District of Louisiana.

The circumstances of the case are stated in the opinion of the court.

It was argued by *Mr. Crittenden* (Attorney-General,) for the United States, and *Mr. Soulé* for the appellees.

Mr. Justice DANIEL delivered the opinion of the court.

The claim of the appellees in this case was preferred in virtue of the provisions of the act of Congress of May 26th, 1824, entitled "An act enabling the claimants to lands within the limits of the State of Missouri, and the Territory of Arkansas, to institute proceedings to try the validity of their claims;" vid. 4 Stat. at Large, 52, which provisions were revived by an act of Congress of the 17th of June, 1844, and extended to the States of Louisiana and Arkansas, and to so much of the States of Mississippi and Alabama as is included in the district of country south of the 31st degree of north latitude, and between the Mississippi and Perdido rivers. 5 Stat. at Large, 676.

The original petition, presented in the name of Jacob Brandegee, sets forth that in pursuance of an order of Don Manuel Gayoso de Lemos, Governor-General of Louisiana and West Florida, Don Carlos Laveau Trudeau the royal Surveyor, did on the 15th of November, 1798, deliver to Donna Maria Manetta Laveau Trudeau, a tract of land, containing five hundred superficial arpens, situated and bounded as in the petition described, and as contained in a survey or figurative plan accompanying the petition, and as said to have been set forth in a survey alleged to have been previously made by Pintado, Deputy-Surveyor of Louisiana and West Florida. That afterwards, on or about the 12th day of November, 1798, the Governor-General Gayoso de Lemos, made a regular concession or grant of this land to Donna Maria Manetta Laveau Trudeau; that on the 31st of August, 1821, the said Donna Maria conjointly with her husband, Josiah E. Kerr, sold and conveyed the land granted as aforesaid to Brandegee, and the deed to him is made an exhibit in this case. The petition further states, (referring to the metes and bounds of the grant, as described in the survey and evidences of title) that the claim had been presented to the Board of Land Commissioners, whose decision had been adverse thereto; that the whole of said tract of land, or the greater part

thereof, had either been sold by the United States, or confirmed to actual settlers. The petition then concludes with the prayer, that the title of the petitioner may be held good, and that he may be entitled to enter an equal quantity of land in lieu of that which had been sold or confirmed to others. The petitioner, Jacob Brandegee, having departed this life after the institution of these proceedings, they were revived in the name of his widow in community, and of his children and heirs.

There is not exhibited with the petition or in any part of the proceedings, an original order from De Lemos to Trudeau, directing the latter to deliver to Donna Maria Manettá Trudeau, the land mentioned, but there is a certificate signed by Carlos Laveau Trudeau, as Royal Surveyor, stating that he had delivered possession to Donna Maria Manetta Laveau Trudeau, of the tract of land of five hundred superficial arpens, corresponding with the figurative plan or survey, in which the boundaries are described with great precision. This certificate is followed by an instrument adopting and confirming it, signed by Gayoso De Lemos, styling himself Brigadier of the Royal Armies, Governor-General and Royal Vice-Patron of the Provinces of Louisiana and West Florida; and this instrument, after reciting the boundaries as contained in the certificate, concludes in the following terms: " And recognizing the same; approving them as we do hereby approve them, availing ourselves of the faculty which the King has given us, we grant in his royal name, to the aforesaid Donna Maria Manetta Laveau Trudeau, the aforesaid five hundred superficial acres of land; that she may use and dispose of them as her own property, in conformity with the aforesaid acts."

Upon the aforegoing petition, and the documents above referred to, constituting all the evidence in this cause, the District Court, on the 8th of June, 1849, ordered and decreed, " that the grant made by the Spanish government to Donna Maria Manetta Laveau Trudeau was a perfect one; that therefore, the plaintiffs are entitled to the relief granted by the act of Congress, approved on the 17th of June, 1844, and the act of 1824, to which it refers; and that it is therefore ordered and decreed, that the grant is valid against the United States, and that the land described in the said grant and survey thereof, as part of the exhibits, containing five hundred superficial arpens, according to the metes and bounds as described in the said grant and survey, belongs to the petitioners holding under the original grantee." The same court then proceeds to declare; " that whereas it is ascertained that a great part of the land is now held by titles emanating from the United States, it is further ordered, adjudged, and decreed, that for all the land within the limits so

held, which has been sold or otherwise disposed of by the United States, the petitioners shall be, and they are hereby authorized to enter in any land-office of the United States in the State of Louisiana, a like quantity of public land elsewhere, in conformity with the provision of the 11th section of the act of Congress, approved on the 26th of May, 1824."

This decision of the district judge is palpably inconsistent with the repeated adjudications of this court, upon the language and objects of the act of Congress of 1824, and of the reviving act of 1844; and is indeed contradictory and inconsistent with itself, in the different grounds it assumes for its support. Before proceeding to a more particular examination of the decision of the District Court, it seems proper to advert to the true position of the petitioner, or rather of the grantee, from whom his title is deduced, as described in the petition, and to inquire whether that position, as there described, apart from the question of the completeness or incompleteness of the grant, be one on which the jurisdiction of the District Court could attach. Thus it must be remembered, that in the enumeration in the act of 1824, of the qualifications requisite for claiming the benefit of that act, is the residence of the grantee within the province of Louisiana, at the date of the grant, or on or before the 10th day of March, 1804. This requisite of residence at one of the periods prescribed, can in nowise be received as a matter of form. It is of the essence of the right to invoke the aid of the act of Congress, which was designed to confer a benefit on actual occupants or settlers. Such being its character, it should, therefore, in every instance in which that act is appealed to, be both averred and proved. In the case before us the petition is wholly silent as to this qualification, and no proof is adduced as to its existence. For this omission alone, then, to aver a material, nay, the most material ingredient in the right to invoke the aid of the act of 1824, the petition presented no case upon which the jurisdiction of the District Court could attach. This point has been ruled in the cases of the United States v. Reynes, in 9th Howard, 127, and of the United States v. D'Auterive, in 10th Howard, 609, and in other cases decided during the present term of this court. But let us view this case in other aspects of it, as exhibited upon the face of the petition and documents adduced to sustain it; and as it is characterized in the decree of the District Court, in order to determine whether it be one within either the mischiefs or the remedies described or provided by the act of Congress of May 26th, 1824. By recurrence to the certificate of Trudeau, and to the figurative plan accompanying it, dated November 15th, 1798, the quantity of the land and the boundaries thereof will be seen to have been

fixed and described with the utmost precision, so as to leave no room for mistake or uncertainty.   Turning next to the grant or concession by Gayoso, on the 12th of December, 1798, it will be seen that the certificate of survey by Trudeau, and the figurative plan, are directly referred to, and all the lines and boundaries, the quantity of land, and, indeed, every *indicium* by which it had been described, are adopted by the grantor, in the very language of the certificate; and after such reference and adoption, the grant concludes in the following terms: "Approving them as we do hereby approve them, availing ourselves of the faculty which the King has given us, we grant in his royal name, to the aforesaid Donna Maria Manetta Laveau Trudeau, the aforesaid five hundred superficial acres of land, that she may use and dispose of them as her own property, in conformity with the aforesaid acts."   The effect of these proceedings on the part of the Spanish governor was to vest in the grantee a perfect legal estate, in the subject granted the *titulo in forma.*   The District Court, upon the strength of these proceedings, declares what was unquestionably true, viz., that the title vested in the grantee by the Spanish authorities was a perfect one; but the court goes on to deduce from this truth a consequence which it did not warrant, but which it entirely excluded, viz., that "therefore the plaintiffs are entitled to the relief granted by the act of Congress, entitled, &c."   The legitimate deduction from the facts above ascertained and admitted by the court, would have been to this effect, and therefore the District Court could have no jurisdiction of the plaintiffs' petition, and that the same be accordingly dismissed.   It is in this respect that the inconsistency of the decree of the District Court, with the facts on which it professes to be founded, and with the acts of 1824 and 1844, and with itself, is made manifest.   It first asserts the completeness of the title of the petitioner, and then declares it to be dependent on aids provided by statute; provided for the purpose of perfecting titles avowedly incomplete, which must continue forever incomplete, except for the means so provided for perfecting them.   That interpretation of the acts of Congress of 1824 and 1844, which declares them to be inapplicable to perfect legal titles, can no longer be questioned.

It has been expressly ruled in the cases already cited of the United States *v.* Reynes, in 9th Howard, 127, and in the United States *v.* D'Auterive, in 10th Howard, 609; and upon the same interpretation of the statutes above-mentioned, have numerous cases been decided during the present term.   The decree of the District Court in this case is marked by other peculiarities which must deprive it of any validity whatsoever.   The decree first decides that the title of Donna Maria to the land in question is

good and complete as against the United States, and that, therefore, the land belongs to the petitioners, as deducing title from her.   The decree then proceeds to declare and order, "that whereas it is ascertained that a great part of the said land is now held by titles emanating from the United States, it is further ordered, adjudged, and decreed, that for all the land within the limits so held, which has been sold or otherwise disposed of by the United States, the petitioners shall be, and they are hereby authorized, to enter in any land-office of the United States in the State of Louisiana, a like quantity of public land elsewhere, in conformity with the provisions of the eleventh section of the act of Congress, approved on the 26th of May, 1824."

Now, it is to be observed in the first place, that there is, in this case, on the part of the United States, a general denial of every fact contained in the petition; nothing is admitted directly or by implication.   In the next place, there is not in this record to be found even an attempt to show a grant or confirmation of any portion of this land by the United States to any person whomsoever; nor the possession of it, nor of any portion of it, by any person at any time; not even by the petitioners or those from whom their title is deduced.   Indeed, none but the government of the United States is made a party defendant in this case.   Upon what proof, or on what surmise even, the District Court could conclude, that the lands had been granted or confirmed by the United States, this court cannot conjecture.   Even if the opinion of the court could import intrinsically any proof upon this point, the inquiries would remain, as to what portion of the lands had been granted; by whom, and to whom.   Without information upon these heads, it seems difficult to imagine, if the fact of grants having been made were to be conceded, what should be the extent of the equivalent to be substituted for them.   The mere assertion of the one or the other can invest no right, and impose no duty.   It is too vague and indefinite to be comprehended, much less to be enforced with due regard to the rights of the parties to the cause.

It is, therefore, for the several reasons before assigned, the opinion of this court, that the decree of the District Court be reversed, and the petition dismissed.

## *Order.*

This cause came on to be heard on the transcript of the record from the District Court of the United States for the Eastern District of Louisiana, and was argued by counsel.   On consideration whereof, it is now here ordered, adjudged, and decreed by this court, that the decree of the said District Court in this

cause be, and the same is hereby reversed and annulled, and that this cause be, and the same is hereby remanded to the said District Court, with directions to dismiss the petition of the claimants.