[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 44 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 45 
On the death of William Cameron, the fee of the farm in controversy descended to his seven children, as tenants-in-common, subject to their mother's right of dower; and Mrs. Peck, as one of the tenants-in-common, and her husband, by her authority, were justified in entering upon the premises, unless she had in some way divested herself of her right. The widow's right of dower was but a chose in action, and no one claiming under her by virtue of such right could exclude any of the heirs. (Green v. Putnam, 1 Barb., 500.)
This court has already decided that the submission and award which have been introduced in this case are void. The question came before the court under the following circumstances: Mrs. Cameron having received letters of administration upon her husband's estate, neglected to file in the office of the surrogate an inventory of the estate, and a summons was issued by the surrogate, on the application of Hiram Peck, in behalf of his wife, requiring her to return the inventory, or show cause why an attachment should not issue against her. On the return of the summons no inventory was filed, and the administratrix showed, for cause why an attachment should not issue, the submission and award which have been introduced by her tenant in this case. The surrogate held the cause shown sufficient, and refused the attachment. This order was affirmed by the Supreme Court. On appeal to this court, the judgment of the Supreme Court and the order of the surrogate were reversed, on the ground that the submission and award were void.
It is now claimed that the submission and award have been ratified by the defendant and his wife, and are therefore effectual *Page 46 
to protect Mrs. Cameron's life estate in the premises in dispute; or at least that there was some evidence of ratification which gave the plaintiff a right to submit the question to the jury. It is also claimed that the acts of Peck and wife have been such as to estop them from claiming the premises in hostility to Mrs. Cameron. In regard to the question of ratification, it is sufficient to say that the submission and award were pronounced void, because they were in conflict with the statute, which declares that no submission to arbitration "shall be made respecting the claim of any person to any estate, in fee or for life, to real estate." (2 R.S., p. 541, § 2.) Being prohibited by statute, the submission and the award in pursuance of it were not merely voidable, but void, and consequently incapable of ratification. Acts which would pass the title, or estop Mrs. Peck from claiming it, without reference to the award, and such only, would be available to the plaintiff, to sustain his action.
In considering the question of estoppel, the acts and declarations of the husband must be disregarded. The property belonged, under the acts of 1848 and '49 "for the better protection of the property of married women," exclusively to the wife, and the husband could do no act to prejudice her title. The only act of the wife, upon which reliance is placed, as creating an estoppel, is her signature to the deed purporting to convey to her brother the farm awarded to him. If the question were now first presented, whether the statute of 1849, authorizing a married woman to convey real and personal property "in the same manner and with the like effect as if she were unmarried," rendered her execution of a deed for the conveyance of land effectual without acknowledgment, I should be inclined to hold that it did not, and that the provision of the Revised Statutes declaring that no estate of a married woman residing in this State should pass by any conveyance not acknowledged, still remained in force, on the ground that there is no express repeal, and a repeal by implication is never held to take place where both acts may stand together. The contrary, however, has been held, and it is too *Page 47 
late now to question the correctness of that conclusion, involving, as it doubtless would, the validity of many titles. (Blood v. Humphrey, 17 Barb., 660; Andrews v. Shaffer, 12 How., 441; Yale v. Dederer, 18 N.Y., 271.) Assuming, however, that the deed was effectual to convey her interest in the land described in it, there was nothing in the transaction to estop her from claiming her interest in the other lands descended to her from her father. The absence of any evidence whether her signature to the deed was the first or the last, or that it was designed to influence, or that it did influence, the action in any respect of her mother, or her co-heirs, leaves the plaintiff's case without any of the features which characterize an estoppel. (3 Hill, 222; 9 Barb., 618; 3 Kern., 638.) Indeed, whatever may have been her declared object in executing that deed, and however it may have influenced the other parties, I am not able to see any ground on which it could be held to estop her from asserting her title to other lands. (2 Leon., 285; Reeves' Dom. Rel., 2d ed., 108.) Nothing, therefore, appears upon the record in this case which could justify a jury in finding that Mrs. Peck had parted with, or impaired her title to one seventh of the farm in controversy, which descended to her on the death of her father, and her entry upon it, and that of her husband with her, was rightful, and the nonsuit was properly granted. The defendant was, I think, equally protected, and for substantially the same reasons, under the lease from Mrs. Tarbell.
The apparently harsh and unfilial character of the defendant's conduct is urged as a reason for sustaining the widow's right to the exclusive possession of this homestead. Whether circumstances may not exist, which could not properly appear in the case, to soften if not remove the harsh features of the transaction, we have no means of knowing; but if we knew affirmatively that there were none, it would still be our duty to dispose of the case according to the legal rights of the parties as they appear clearly before us, leaving any moral questions which may result from the conduct of the parties to *Page 48 
be disposed of by themselves. All attempts of courts, especially courts of last resort, to do better justice in particular cases than the rules of law will admit, are proverbially prone to fall short of their object in the particular cases; and by the introduction of bad precedents are found by experience to be promotive of injustice.
The judgment of the Supreme Court should be affirmed.
DENIO, Ch. J., SMITH, GOULD and ALLEN, Js., were also for affirmance.