By the Court,
Monell, J.
Mrs. Hitchcock, the wife of the judgment debtor, was seised of the premises in question in 1857. She had issue of her marriage, born alive, and she died in 1862, without having disposed of her property by will or otherwise. This, by the common law, constituted an estate, as tenant by the curtesy, in her husband, initiate by the marriage, seizin and birth of a child, and consummate by her death.
It is claimed, however, that the acts of 1848,. 1849, as amended in 1860, 1862, for the more effectual protection of the property of married women, have abrogated the common *315 law rule, and deprived the husband of an estate by the curtesy in all cases."
The acts referred to empower a married female to take and hold to her separate use, and convey and devise real and personal property, in the same manner and with like effect as if she were unmarried, and the same is not subject to the disposal of her husband, nor liable for his debts. There is nothing in the statute which in terms takes from the husband this estate by the curtesy. It is, therefore, by implication merely (in giving so hard a construction to the act as to deprive the husband of his estate) that it is sought to give such effect to the statute.
In the construction of all statutes, which are in derogation of a common law right, it is especially important to know the reasons which influenced the law makers, and to give no greater force or effect to the statute than it was clearly intended it should receive.
By the unity of the marriage condition, the personal estate of the wife, and the use of her real property belonged absolutely to her husband, was subject to his control and disposition, and was liable for his debts. This right and power of the husband could not be prevented from attaching by reason of the marriage relation, except by the intervention of trustees. Ante-nuptial contracts were protected and enforced by courts of. equity, and thus a married woman’s property could be secured to her, but in no other way.
The tendency for many years past has been to relax the rigor of the common law, and to remove much of the legal unity heretofore existing in husband and wife. As a further step towards ameliorating the legal condition of a married woman, and in view of the principles which have always governed courts of equity it is presumed that the legislature enacted the law in question. It enables a married woman, notwithstanding her coverture, to hold real and personal estate, and to dispose of it, without the right of interference or control by her husband. The power to hold and enjoy her' estate, and the power to dispose of it during her life, or by will to take effect upon her *316 death, is clearly conferred by the statute, and the husband has no interest which he can claim during the life of "his wife, or which can be subjected to the payment of his debts. The manner of disposition of the estate by the wife is not prescribed by the statute. She may pass it by gift or grant, or by will.
# It cannot be disputed, I think, that it was the obvious intention of the legislature to secure to a married woman the absolute right to enjoy her property, with as absolute a right to dispose of it. The complete exercise of such latter right would necessarily deprive the husband of any estate or interest either during the life or after the death of the wife. But I cannot think it was-the intention to change the laws of inheritance, or the marital rights of the husband, unless it is done by the act of the wife. She has the power to do so. She may prevent the estate from descending to her heirs-at-law; but if she neither conveys during her life, nor devises by will, no one will pretend that the estate would not go, upon her decease, to her heirs-at-law.
An estate by the curtesy can only attach when there is a seisin in the wife of an estate which her issue may by possibility inherit as heir. (4 Kent’s Com. 27.) Hence, the estate being inheritable, the heir may be said to have an interest, which can only be destroyed by the a'ct of the mother. If she omits to act, and leaves the estate undisposed of at her death, it goes to the heir-at-law. Such inevitably being the result, then the acts of 1848-9, have merely conferred a power to hold and dispose, which can be exercised by the wife alone.
The right of the heir to inherit is a common law right, except so far as it has been changed by the statute of descents, and it is idle to suppose that it was intended to take away such right, where the estate was left otherwise undisposed of.
During the life of the wife the husband now has no estate or interest in her lands. Nor has the heir-at-law. Yet the latter may inherit. He inherits because the statute has not changed or annulled the common law rule of descent, and because the estate has not been disposed of by grant or will.
The relative right of the husband under the common law is the same. The estate .was one that the issue of his marriage *317 might by possibilty inherit, and the tendency of the husband was initiate when issue was born. This initiate estate was liable to be defeated by the act of the wife ; but the omission of the wife to act could no more deprive the husband of his curtesy, than the heir of his inheritance.
The title of the act is significant: “An act for the more effectual protection of the property of married women.” It is to protect it in the wife, so that, during" her life, she may not be deprived of it by her husband. The act of 1848 gave no power to dispose by grant or will. The amendment of 1849 added that power. She may grant or devise it. If she does not one or the other, then upon her death all the common law rights attach ; the husband has his curtesy, and the heir-at-law has the fee in remainder.
In short, the acts of 1848-9 have conferred a right and a power upon a married woman, which she did not possess at the common law, which protects her in the enjoyment of her property, and enables her to dispose of it according to her wishes. In the language of Judge Denio, (White v. Wager, 25 N. Y. Rep. 333,) “ by assimilating the case of a wife to that of an unmarried woman, the legislature merely meant to say that she should have the same power as though she was not under the disability of coverture.” I cannot think any thing more was intended, or that it was designed to take from the husband any estate at common law, which the wife did not by her act deprive him of.
It was ingeniously argued by the defendant’s counsel that there could be no initiate estate, and without which there could be no estate at all. The estate was initiated at the birth of a child, as the child at that instant became heir, and might inherit. So the husband’s estate began; But both the inheritance of the child and the estate of the husband were subject to the power of disposition in the wife.
The act makes no distinction between real and personal property, and its protection is extended alike over both. All common law rights, which are not disturbed in respect to personal estate, are necssarily unaffected as regards real, and I am *318 unable, therefore, to discover any difference between this case and Ransom, v. Nichols, (22 N. Y. Rep. 110.) No such distinction is suggested in that case. The plaintiff, as administrator of Mrs. Nichols, sued her husband to recover the amount of a note to Mrs. Nichols, as her separate estate, and which her husband had collected and given up. The court there say, in reference to the acts of 1848-9, that if the wife fails to make any disposition of her property, by sale during her life, or by will, to take effect upon her death, then the rules which prevailed before the statutes were enacted take effect, and the husband has all the rights given him by the common law, It was contended by counsel that in Ransom v. Nichols, the estate being personal, it passed to the husband as administrator under the Revised Statutes. It is immaterial whether the right to take was conferred by statute or by the common law. Either would be sufficient to make it perfect. Besides, in that case, the right of the husband to hold is recognized, either as an incident to the marital relation and flowing from it, or as an incident to his right of administration upon her estate.
In a recently reported case in the Supreme Court, (Jaycox v. Collins, 26 How. Pr. R. 496,) which involved the precise question we are now considering, it was held that the estate "by the curtesy has survived the acts of 1848-9. The review of all the cases in this state is so complete in Jaycox v. Collins that I do not deem it necessary to notice them here, except to say that the clear weight of authority is in favor of sustaining the estate.
My conclusion is, that Mrs. Hitchcock, having died without disposing of the property, her husband became entitled to an estate as tenant by the curtesy, which estate passed to the plaintiff .as receiver under the supplemental proceedings, entitling him to recover the rent due at the period of his appointment, and all rent accruing afterwards, until, his receivership ceases.
There being no other exceptions, I am of opinion that the plaintiff should have judgment upon the verdict.