By the Court, Monell, J.
The deed of Mrs. Mcllvaine (the plaintiff;) having been executed by her while an infant, is voidable ; not void. Such, I think, is the- clear weight of authority. (Roof v. Stafford, 7 Cowen, 179. Bool v. Mix, 17 Wend. 119. Temple v. Hawley, 1 Sandf. Ch. 153. Wetmore v. Kissam, 3 Bosw. 321.)
The instrument of November 20, 1863, was a sufficient act of avoidance, unless its execution by the plaintiff was restrained during coverture. (Jackson v. Carpenter, 11 John. 539. Jackson v. Burchin, 14 id. 124.)
Independently of the statute, for the more effectual protection of the property of married women, the trust deed could not be avoided by the plaintiff, during coverture. Such seems to be the preponderance of authority on the subject. (Temple v. Hawley ; Wetmore v. Kissam, supra, and the cases there cited and reviewed.)
The act of 1849, (Laws 1849, p. 528, chap. 375,) enables a married woman to hold to her separate use, and to convey any real or personal property, and the rents, issues and profits thereof, in the same manner and with the like effect as if she were unmarried ; and such property and rents are not subject to the disposal of her husband, nor liable for his debts. This act has been held to be constitutional and valid, (Clark v. *432 Clark, 24 Barb. 581. Thurber v. Townsend, 22 N. 7. Rep. 517.)
The effect of the statute referred to is, to deprive the husband of all right toi or interest in his wife’s property during her life. By the unity of persons, the common law transferred to .the husband all the personal property of the wife absolutely, and gave him the usufruct of all her real estate during their joint lives, and after her death, issue being born, an estate for his life. The intention of the legislature was to overturn all these provisions of the common law, which bestowed upon the husband the property of the wife, and confer upon the latter the unrestrained right to, and control over such property, as if the marital relation did not exist.
The reason which founded the doctrine that an infant’s deed cannot be avoided during coverture ■ is, that it might interfere with or in some way affect the marital right of the husband, or defeat the settlement. Lord Ch. Eldon says, in Milner v. Lord Harewood, (18 Ves. 275,) that the husband being seised jure uxoris, would have a right to say that-if she would not settle according to the agreement, he would not give his consent; and Lord Thurlow, in Durnford v. Lane, (1 Bro. C. C. 115,) says, if she did not when of age choose to accede to the engagement, the conscience of her husband was bound not to aid .her in defeating it; and in equity, as he would, not be permitted to do so, it is impossible to permit her act during covérture to be effectual.
It seems, then, that the disabilility of the wife, during coverture, was because of some estate, or right, or interest of the husband jure uxoris, in the property of the wife.
I have assumed that the weight of authority was against the right of disaffirmance, during coverture, of real property conveyed by an infant. It seems to be equally well settled, that the rule does not apply to a settlement of personal estate. (Simpson v. Jones, 2 Russ. & Myl. 371. Temple v. Hawley; Wetmore v. Kissam, ubi supra.) In settlements of personal estate, it is said that it is bound, because it would otherwise become the husband’s, and therefore it is his settlement, not *433 hers ; whereas the real estate of a female infant was not bound, because it did not become the absolute property of the husband, though he took a limited interest in it. • The ambiguity of the distinction, and the uniform concurrence of judges in it, entitles it to much weight. Otherwise, it would be difficult to perceive wherein the distinction lies. In the one case the husband takes all the personal estate; in the other he takes all the usufruct of the real. During his life, she is as wholly deprived of his real, as of her personal estate. The end to be gained by antenuptial settlements was to secure the real or personal estate, or both, of the wife to her future use, with a jus disponendi, by will. Why should a different doctrine be applied to these settlements ? Why can one be disaffirmed during coverture, the other not ?
All the cases in the books, and there are many, are cases where the court has been invoked to aid parties in annulling their deed of settlement; and the courts have refused, for the reasons already stated. At common law, a feme covert could not alien her lands by deed ; she might, with her husband, levy a fine, or suffer a common recovery; hence it became necessary to obtain the aid of the court. But under our statutes the deed of a married woman is effectual to pass her interest in lands. And I will here remark, in passing, that the execution of the trust deed and the instrument of revocation, by the plaintiff’s husband, was of no importance whatever ; he had no estate or interest to convey, and her execution alone would have been sufficient. (Albany Ins. Co. v. Bay, 4 Comst. 9.)
In the case before us, the trusts created were for the sole benefit of the plaintiff. No other person had any interest, beneficial or otherwise, in either the trusts or the estate. The trustee was required to collect the rents and pay them to the plaintiff; he was invested with power to sell; and upon the death of the plaintiff, he was directed to dispose of the estate according to her will, or in default of a will, to the persons entitled by law to inherit from her.
Under the statute referred to, this conveyance in trust was *434 probably unnecessary. The protection afforded by the law to the property of a married female is quite as effectual as it can be made by the contract of parties.
In leaving this branch of the question, it is perhaps sufficient to say, that the rules respecting the irrevocability of marriage settlements, during coverture, are supported by very slight, if not altogether insufficient reasons, when applied to the facts in the case before us.
The act for the protection of the property of married women has worked a complete radical change in the marital rights of husbands. Their old common law right to the personal estate of the wife and the use of her real estate is gone ; they have no estate, or interest, or right whatever, absolute or contingent, except that upon the death of the wife, after issue born, without exercising the jus disponendi, the husband has an estate for his life as tenant by the curtesy. (Beamish v. Hoyt, 2 Rob. 307. Ransom v. Nichols, 22 N. Y. Rep. 110. Jaycox v. Collins, 26 How. Pr. 496.) A married woman may hold her estate during life, discharged of all control over, or power of disposal by her husband ; and may convey it in his lifetime, or devise it by will, to take effect on her death, to whomsoever she pleases ; and, as we have seen, (Albany Ins. Co. v. Bay, supra,) her husband's consent is not necessary to render the transfer effectual; nor, need her conveyance be acknowledged in the manner required by the Revised Statutes, respecting acknowledgments by married women. (Wiles v. Peek, 26 N. Y. Rep. 42.)
The natural, if not inevitable effect of the statute we are considering is to destroy the reason on which the common law rule of disability during coverture was founded. Hone of the marital rights of the husband are invaded; nor are the courts called upon to aid in the avoidance. In respect to her separate estate, the wife is a feme sale.
There was an apparent reluctance in the courts, at first, to give to the act of 1849 the wide and sweeping effect which, it has since been conceded, was intended by the legislature. It *435 was radical and startling, as it was in plain derogation of a long established common law right.
The court, in Blood v. Humphrey, (17 Barb. 662,) uses this emphatic language : “ The legislature intended to remove the entire disability which the common law and the statute had thrown around married women, not only as regards their right to take and hold, free and independent of their- husbands, but also, to remove the obstacles which the law had interposed against their conveying both by grant and devise, and to place them, so far as the lands which they held in their own right were concerned, on the same basis precisely-as unmarried females.” And Comstock, J. in Yale v. Dederer, (18 N. Y. Rep. 271,) says: “ In respéct to estates acquired and held under the protection of this statute, the disabilities of coverture would seem to be removed.” I will extract but from one opinion more. Judge Denio, in White v. Wager, (25 N. Y. Rep. 333,) uses this language : “ By assimilating the case of a wife to that of an unmarried woman, the legislature merely meant to say, that she should have the same power as though she was not under the disability of coverture. Taking away that disability, she would have power to make all such conveyances as were not forbidden by special provisions of law; but such general' statutes are never understood to overreach particular prohibitions, founded on special reasons of policy or convenience.”
Against this strong current of high judicial opinion, running towards a beneficent construction of the married woman’s enabling act, it is in vain for common law doctrines to contend ; and however reluctantly, they must nevertheless yield.
Enough, I think, has been shown to establish the proposition that by force of the act of 1849, the disability of a married woman to convey, her separate estate is removed; and it follows, necessarily it seems to me, that she is therefore under no disability by reason of her coverture, to disaffirm her voidable deed.
It remains to examine the case of Wetmore v. Kissam, in this court (supra,) which is apparently opposed to the view I *436 have taken. In that case, an ante-nuptual agreement had been executed in New Jersey, conveying the intended wife’s property to a trustee. The trusts were to pay the income of the estate to the wife during life, and upon her death, leaving her husband surviving, and no child or the issue of any deceased child, to pay the income to her husband during life. The wife, (who was an infant when the settlement was made,) on attaining her majority, without any act of disaffirmance, sought, by her action, to obtain possession of the trust estate in the hands of the trustee. Her husband was made a party defendant; but it does not appear, (farther than that he did not answer the complaint,) that he consented to the attempted avoidance of the deed of settlement by his wife.
' The learned justice, (Hoffman,) who delivered the opinion of the court, after reviewing at much length the numerous cases' touching this question, dismissed the complaint, on the ground that the court would not assist the plaintiff to defeat her settlement. He says the question was not, whether in a court of law, a deed for a valuable consideration, executed by the plaintiff and her husband, accompanied by án: entry, would supersede the settlement, and pass a valid title, but whether a court of equity would upon her application, while still covert, and after the birth of issue provided for in the settlement, and when such settlement is a just and fair one, lend its aid to annul and cancel it. The statute of 1849 was also commented upon and considered as not changing the common law rule ; and the 3d section, which is in these words, “ All contracts made between persons in contemplation of marriage shall remain in' full force after such marriage takes place,” it was argued, left the rule where it was before the statute was enacted. Tet Justice Bosworth freely admits that the statute has removed the reason of the rule on which settlements of personal estate, made by a female infant, have been upheld.
But I regard the case of Wetmore v. Kissam, as settling nothing more than that a court of equity will not entertain a suit by a wife to avoid her settlement during coverture. It does not decide that she may not disaffirm it by some distinct and *437 unequivocal act of avoidance of her own. But even if that case stood in the way, the more recent decisions in the Court of Appeals, to which I have referred, are broad enough to cover the views I have expressed.
I have examined and considered this case with great care. The' question is new, not having been directly passed upon by any court that I am aware of, and I am brought to the conclusion, clearly and without doubt,
First. That the trust deed from Mrs. Mcllvaine, having been executed by her while she was an infant, was voidable by her, on her attaining full age ; and,
Second. That the instrument of disaffirmance, executed by her, after she became of age, and her entry under it, invested her with a good and complete title to the premises in question, notwithstanding her coverture.
I concur therefore in the opinion that the plaintiff should have judgment, requiring the defendant specifically to perform his contract, with costs.
McCunn, J.
The question to be determined in this case is, can Mrs. Mcllvaine, by and with the consent of her husband, after she arrives at majority, sell and convey the property mentioned in the trust deed given to Tracy. I am clearly of opinion that she and her husband can. The only effect the trust deed had was to vest in the trustee the legal title to the property in question, subject to be divested by the wife’s disaffirmance of the deed on arriving at full age. (Bool v. Mix, 17 Wend. 119. Sandford v. McLean, 3 Paige, 121.) The deed of November 20, 1863, followed by the plaintiff’s entry, was an effectual disaffirmance within the most rigid meaning of the word. The Chancellor, in the case of Bool v. Mix', and Chief Justice Bronson, in the case of Sandford v. McLean, in very learned and able opinions, dispose of the whole question involved herein. The question under consideration is not at all affected by the plaintiff’s coverture. The statutes of 1848 and 1849 give her the power of a feme sole, as to the acts in question. In disposing of the case, I do not believe it *438 at all necessary to advert to the numerous cases (cited on both sides) arising' upon a marriage settlement of female infants. The trust deed executed in this case, by the plaintiff to Tracy, not being of that character, there is not the slightest shadow of an excuse for setting up such deed as a bar to any conveyance she may make after arriving at years of majority. Much discussion has taken place, and numerous cases have been cited in the. briefs of counsel, upon the point whether a female infant can be bound by her covenant, upon marriage, as to her real property—a point for which there is no room here; I do not, therefore, examine those cases; merely observing that the most eminent judges in England, and in this country, such as Lords Mansfield, Thurlow, Eldon and others, on the one side, and Chancellors Walworth and Hoffman, and Chief Justices Bronson and Bosworth, and others, on the other side, are of the opinion that a female infant could not be so bound ; and I decidedly concur in their views.
- The judgment must be for the plaintiff, with costs, requiring the defendant to specifically perform the contract.